The greater weight of the evidence indicates that the condition of plaintiff's hands and arms, diagnosed as carpal tunnel syndrome in October, 1992, was not related to her employment with defendant, from which she was fired in January of 1991. Dr. William Lyday, who treated plaintiff from 1987 to 1990 with multiple surgeries, did not diagnose plaintiff with carpal tunnel syndrome. During a period of treatment from April 7, 1989 through May 5, 1990, plaintiff never complained to Dr. Lyday of problems with her hands, arms or fingers. As late as October, 1990, she was found not to be suffering from carpal tunnel syndrome. Although the plaintiff frequently complained over the years of numbness and swelling in her hands related to various other medical problems, based on the medical records and the Deputy Commissioner's evaluation of the witnesses, we find that such complaints did not coincide with the "repetitive" card tasks during the last year of her employment, and that the employment did not cause or contribute to her subsequent problems.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, with minor changes the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds and concludes the following, which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. At all times relevant to this action, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all times relevant to this action, an employer-employee relationship existed between defendant-employer and plaintiff.
3. At all times relevant to this action, Liberty Mutual was the insurance company on the risk.
4. The first forms 33 and 18 filed in this case.
5. A copy of the civil complaint filed in connection with this matter.
* * * * * * * * * * *
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff, a 44 year-old woman with a 10th grade education, was employed by IBM in different positions from March 5, 1981 until January 25, 1991. Starting on December 31, 1988, following medical leave, plaintiff was employed as an assembly inspector.
2. As an assembly inspector, plaintiff was required to count and stack computer cards, to dry computer cards with the use of a heater, to take tape off and place tape on computer cards, and to make sure that the computer cards were within certain specifications by gauging (measuring) the cards. When plaintiff was required to tape cards, she taped 60-70 cards per hour, or roughly one per minute.
3. Plaintiff had a significant history of hand swelling and numbness well before she became an assembly inspector. Plaintiff saw the IBM company nurse on numerous occasions. In particular, on April 3, 1984, on September 6, 1985, in June and July of 1985, as well as on January 13, 1986, it was noted in her company medical record that plaintiff was experiencing hand swelling. The manager of the defendant's occupational health unit testified that she was unaware of a diagnosis of carpal tunnel syndrome during plaintiff's employment with defendant.
4. Plaintiff was involved in a car accident on November 19, 1985, and indicated to her treating physician at the time, Dr. Robert E. Miller, that she was experiencing numbness in her hands. Dr. Miller treated plaintiff for cervical and lumber spine problems. He attributed complaints that did not follow nerve distribution patterns to plaintiff being "an extremely nervous individual". In January of 1986, nerve conduction studies were conducted on plaintiff which showed a slight slowing of the nerve conduction on both sides and a delay in conduction, but plaintiff made no carpal tunnel complaints. Plaintiff's job did not involve cards until Dr. Miller recommended lighter work.
5. Plaintiff was seen by Dr. William Lyday, a thoracic and general surgeon, during hospitalization from January 21, 1987 through February 21, 1987. At that time, plaintiff was experiencing intense tingling and numbness down both of her arms. Dr. Lyday diagnosed plaintiff as having a brachial plexus compression syndrome. Examinations and tests for carpal tunnel syndrome were negative on March 11, 1987, and during later hospitalization. On June 1, and July 30, 1987, plaintiff had brachial plexus decompression surgeries.
6. On February 1, 1988, plaintiff had a left transthoracic cervical sympathectomy stellate ganglionectomy. On September 16, 1988, plaintiff had a right transthoracic cervical sympathectomy stellate ganglionectomy. Dr. Lyday also treated plaintiff from April 7, 1989 through May 5, 1990, and removed breast lumps. He referred plaintiff for physiotherapy for shoulder discomfort, but otherwise, plaintiff had no complaints regarding her head, neck, shoulders, arms, hands or fingers. Dr. Lyday, in his treatment of plaintiff from April 7, 1989 to May 4, 1990, never diagnosed plaintiff as having carpal tunnel syndrome or heard complaints suggesting it.
7. During her employment at IBM, plaintiff took a number of prescription drugs and other medications, including Tolerin, Sinequan, Keyflexon, Naprosyn, Karafate, Reglin, Bisteral, Tagamet, and Flexeril. Plaintiff also took Prednisone for heart problems, and testified that she experienced hand swelling because of the Prednisone.
8. Plaintiff was suspected to have carpal tunnel syndrome symptoms in October of 1992, 19 months after leaving IBM. After a nerve conduction study was done on December 30, 1992, plaintiff underwent a right carpal tunnel release operation in February, 1993, and a left carpal tunnel release in May, 1993. Plaintiff underwent a left re-release of the carpal tunnel in March, 1994. In June, 1994, plaintiff underwent a right carpal tunnel release with a synovial biopsy.
9. During her employment as an assembly inspector at IBM, plaintiff was absent a significant amount of the time and her work output fell far below the normal averages of similar employees.
10. Plaintiff never complained of carpal tunnel syndrome symptoms to her supervisors at IBM during the last year of her employment. Pat Smith, her supervisor from February 4, 1989 through December 1, 1990, approached employee-plaintiff to discuss her lack of work output during 1990. At this meeting, plaintiff did not mention any carpal tunnel symptoms. During his supervision of plaintiff, she did not report any type of hand problem to Mr. Smith, any other IBM manager, nor IBM medical personnel.
11. From December 2, 1990 until plaintiff was terminated in January of 1991, Mark Payne was plaintiff's supervisor. Plaintiff was terminated by IBM because of excessive breaks, routine tardiness, and failure to document her work. At her termination meeting, plaintiff did not describe any carpal tunnel syndrome symptoms, and furthermore told Mr. Payne that he would get what he "had coming." During Mr. Payne's supervision of plaintiff, plaintiff did not report any type of hand problem to Mr. Payne, any other IBM manager, nor IBM medical personnel.
12. Dr. Stephen J. Naso, Jr., an expert in the field of carpal tunnel surgery, examined plaintiff on May 20, 1994 and reviewed her records. Because plaintiff's nerve conduction studies were normal in 1988 and, as of October 1990, she had no symptoms of carpal tunnel syndrome, Dr. Naso did not believe plaintiff's job to be a cause of any possible carpal tunnel syndrome.
13. Dr. John S. Gaul III, who first saw plaintiff in November of 1993, and performed the re-release surgeries in March of 1994, and June of 1994, believed that plaintiff developed the carpal tunnel syndrome during or because of her employment, and also opined that the disease could have been exacerbated by thyroid disease and plaintiff's "borderline diabetes". However, Dr. Gaul was under the impression that plaintiff's job was moderately repetitive, included repetitive tasks other than taping cards, and that plaintiff was complaining of carpal tunnel syndrome symptoms while she was still working at IBM.
14. Plaintiff had numerous other "risk factors" in her life which could have caused or worsened the carpal tunnel syndrome, including hormonal changes from a hysterectomy, a heart problem which required her to take Prednisone, her smoking, and her surgeries.
15. Plaintiff is currently on Social Security disability, awarded primarily due to a diagnosis of chronic fatigue syndrome. In her application for Social Security disability, she did not claim to be disabled from carpal tunnel syndrome.
16. There is insufficient convincing evidence of record from which to determine that plaintiff's employment with defendant employer placed her at an increased risk of developing bilateral carpal tunnel syndrome as compared to members of the general public.
17. There is insufficient convincing evidence of record from which to determine that plaintiff's employment with defendant employer caused, or was a significant contributing factor in the development of, plaintiff's bilateral carpal tunnel syndrome.
* * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following
CONCLUSION OF LAW
The condition of plaintiff's hands and arms was not due to causes and conditions characteristic of and peculiar to her employment with defendant employer and is, therefore, not an occupational disease. Plaintiff's employment did not cause, aggravate, accelerate, precipitate, or contribute to the development of plaintiff's hand and arm condition. Consequently, plaintiff is not entitled to compensation under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. §§ 97-52
and 53(13). Wilkins v. J. P. Stevens, 333 N.C. 449,426 S.E.2d 675 (1993).
* * * * * * * * * *
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following
ORDER
1. Under the law, plaintiff's claim must be, and hereby is, DENIED.
2. The parties shall bear their own costs.
 S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
JRW:md 3/25/97